[Crim. No. 2764. First Dist., Div. Two. Oct. 23, 1952.]

THE PEOPLE, Respondent, v. TIMOTHY WATSON, Appellant.

800

Timothy Watson, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Winslow Christian and Leo J. Vander Lans, Deputy Attorneys General, for Respondent.

DOOLING, J.—Appellant was charged with the crime of robbery and in a second information with conspiring with one Salisbury to commit robbery. One Augustine was charged with the same robbery but not with conspiracy. The three charges were tried together. During the trial Augustine changed his plea to guilty and appeared as a witness for the other defendants. Salisbury and appellant were found guilty of the conspiracy as charged and appellant was found guilty of the robbery. This appeal followed.

 Two eyewitnesses, the victims of the robbery, identified Watson and Augustine as the two men who committed it. The place robbed was a travel agency and in addition to some cash a large number of blank traveler's checks were taken. Checks aggregating $500 were found behind the grate in a fireplace in the apartment occupied by appellant. From the numbers these were identified as part of the checks taken in the robbery. After first denying any knowledge of these checks appellant later stated to a police officer that they had been given to him by one Don Harrison to purchase heroin.

He gave the same explanation as to a larger quantity of such checks found at the residence of his mistress' grandmother.

The evidence of appellant's guilt of the crime of robbery will, from this recital, be seen to be ample.

The principal evidence on the conspiracy charge came from one German. German was a friend of both Salisbury and appellant and testified that he was told by Salisbury some time prior to the robbery that Salisbury "had a business proposition to make some money . . . He wanted to know if I knew any colored boys I could get in touch with who were cool and nervy. I mentioned Watson's name." After the robbery both Watson and Salisbury admitted their complicity to German.

Appellant contends that this evidence establishes that German was an accomplice and argues that there was no sufficient corroboration of the accomplice's testimony. German's knowledge acquired after the robbery was not sufficient to make him an accomplice (*People* v. *Viets,* 79 Cal.App. 576, 590 [250 P. 588]; *People* v. *Collum,* 122 Cal. 186 [54 P. 589]), and the quoted testimony of German recommending appellant to Salisbury as a cool and nervy colored boy for a business proposition standing alone is not sufficient to establish any guilty knowledge in German.

It is true that Augustine gave testimony which if believed would have exonerated both appellant and Salisbury and would have implicated German as a conspirator to commit the robbery with Augustine. It is clear however that the jury did not believe Augustine or they would not have convicted appellant of the robbery since Augustine testified that German suggested the robbery to Augustine, and that appellant was not present with Augustine when the robbery was committed and had no connection with it, but that the other participant was a man named Robert Lindsay.

The jury was correctly instructed as to what constitutes an accomplice and the necessity for corroboration of his testimony and it is clear that they cannot have believed Augustine's testimony which would have implicated German as an accomplice in the crimes charged.

German was arrested on an old charge of robbery not in any way connected with the crimes here in issue and that charge was dismissed before the trial. Appellant cites *People* v. *Green,* 102 Cal.App.2d 831 [228 P.2d 867], and contends that German's testimony was given under a promise of im-

munity and its reception was prejudicial error. The facts of
the Green case were very different. There it was established
that the witness was promised immunity on the express con-
dition that he would give testimony *which would result in the
conviction* of one jointly charged with him. Here German
was not jointly charged with appellant, the charge against
him of a distinct offense had already been dismissed, and
no promise or bargain of any sort with him was proved. We
can find no similarity between the cases.

█ German testified that after the robbery Salisbury
showed him a copy of an evening paper with a story and
headlines relating to the robbery. A copy of this paper was
exhibited before the jury. There was no impropriety in this
since it was connected directly to one of the defendants on
trial by his own statements to the witness. Appellant cites
on this point cases holding that it is misconduct for jurors
to read newspapers containing accounts of the trial. These
cases stand on a completely different ground and are not
applicable to the question raised by appellant on this appeal.

The court instructed the jury:

"The following instructions, ladies and gentlemen, cover
the question of accomplice. We have heard quite a bit by
both sides, and before I read them, briefly let me say that if
two people were involved in a crime, and one were appre-
hended and the first one said that John Smith was with him
at the time of the robbery, and that is the only evidence
against that second person, that would not be sufficient to
convict that second person. Do you understand that? You
have to have other evidence besides the mere statement of
one of the persons who was involved in the particular crime.
In other words, a conviction may not be had upon the testi-
mony of an accomplice unless it is corroborated by such
other evidence as shall tend to connect the defendant with
the commission of the offense. An accomplice is one who is
liable to prosecution for the identical offense charged against
the defendant on trial. Whether or not any witness in this
case was an accomplice as defined in the instructions is for
the jury to determine from all the testimony, the circum-
stances, as shown by the evidence. To render a person an
accomplice, he or she must in some manner, knowingly, and
with criminal intent, aid, abet, assist or participate in the
criminal act. If you should find that any witness in this case
so conducted himself in respect to the crime charged, you
must find that he was an accomplice.

"The corroboration of the testimony of an accomplice required by the law is not sufficient if it merely shows the commission of the offense or some or all of the circumstances thereof, or if it does no more than raise a suspicion of the guilt of the defendant. On the other hand, it is not necessary that the corroboration extend to every fact and detail covered by the testimony of the accomplice. The corroboration of the testimony of an accomplice is sufficient if, of itself, alone, it tends to connect the defendant with the commission of the offense, although it may be slight and although, if standing by itself, it would be entitled to but little consideration. It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution, and in the light of all the evidence in the case."

■ Appellant singles the one sentence out of this instruction: "It is the law that the testimony of an accomplice ought to be viewed with distrust," and claims that it was error to give it since Augustine was clearly an accomplice and it has been held error to give such an instruction where an accomplice testified for the defense. (*People* v. *Hartung,* 101 Cal.App.2d 292 [225 P.2d 614].) A reading of the instruction as given demonstrates that it was directed solely to prosecution witnesses whom the jury might find to be accomplices. It would have been error for the court not to give the sentence complained of as a part of the instruction on the testimony of prosecution witnesses who are found to be accomplices in view of Augustine's testimony which, if believed, would have established that the prosecution's witness German was an accomplice. (*People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873].) We can find no error in the instruction in the form in which it was given.

■ Finally appellant complains that on cross-examination he was examined about a previous statement in which he had said: "I wasn't working. I get out on the street, try to hustle tricks, and things like that. Q. Tricks for your girl friend? A. Yes."

While we can see no justification for bringing this matter before the jury, in view of the facts that it had been established that appellant was a narcotic addict and seller, that

he had previously been convicted of burglary and when arrested was occupying an apartment with a woman to whom he was not married, and the strength of the evidence of his guilt we are satisfied that this error was not prejudicial.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied November 7, 1952, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1952.